IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BRENDA MVENG-WHITTED,
LAWRENCE HAWTHORNE,
            Plaintiffs,
v.                                              Civil Action No. 3:11-cv-00842-JAG

VIRGINIA STATE UNIVERSITY,
DR. WELDON HILL,
and THOMAS LAROSE
            Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the defendants' motions to dismiss.[1] The case stems from alleged racial discrimination and retaliation by the defendants and the plaintiffs' subsequent termination. The plaintiffs bring assorted claims under 42 U.S.C. §§ 1981 and 1983 and Title VII. The Court shall dismiss Counts One, Five, Six, and Eight—all claims against Virginia State University for violations of §§ 1981 and 1983—due to Eleventh Amendment sovereign immunity. With respect to the remaining counts, the motions are denied, as the plaintiffs allege sufficient factual allegations to support their Title VII claims against Virginia State University and §§ 1981 and 1983 claims against Thomas LaRose.[2]

In addition, the Court shall sever the action due to misjoinder. Fed. R. Civ. P. 21. The two plaintiffs are improperly joined because their claims do not arise from "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). This

---

[1] The defendants have filed two separate motions: one for each plaintiff's respective claims.

[2] Weldon Hill is named as a defendant, but there are no claims made against him in the complaint. In fact, the plaintiffs say that "Dr. Weldon Hill was named as a defendant solely for purposes of service of the complaint. . . ." (Mem. Opp. Mot. to Dismiss 7.) Accordingly, he shall be dismissed from the case.

requirement is not met simply by bringing the same legal claims against the same defendants. The plaintiffs' factual allegations are sufficiently distinct to constitute two separate civil actions and shall accordingly be severed. Finally, the Court shall order additional briefing to clarify certain claims alleged by both plaintiffs and to determine the appropriate statute of limitations for those claims.

## I.    STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a claim and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).[3] When considering a motion to dismiss, the Court must accept all the complainant's factual allegations as true and resolve factual differences in that party's favor. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). Nevertheless, the Court need not accept the complainant's legal conclusions or any other unreasonable or unwarranted arguments as true. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In addition, the complainant must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to overcome a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).

---

[3] The defendants also argue that the action should be dismissed on the basis of Fed. R. Civ. P. 12(b)(1), (4), and (5). These arguments are without merit and will be addressed at the end of the opinion.

## II.   STATEMENT OF FACTS

### A. Mveng-Whitted

The following facts are taken from the plaintiffs' complaint and therefore construed in the manner most favorable to Mveng-Whitted's claims, in keeping with the appropriate motion to dismiss standard. In August 1998, Brenda Mveng-Whitted, who holds master's degrees in graphic design and African art history, began working for defendant Virginia State University ("VSU") as an instructor in the art department. She was promoted to assistant professor in 2002 and associate professor with tenure in 2004. In 2003, she also became "coordinator" of the art and design unit, following the art department's merger with the music department.

In June 2006, Dr. Mark Phillips retired as chairperson of the music, art, and design department. Thomas LaRose succeeded him in this role, though it is unclear from the parties' pleadings precisely when this took place. Prior to LaRose's tenure, Mveng-Whitted received positive performance evaluations each year of her employment. In 2007, however, during LaRose's first year in office, she received a poor performance evaluation, even though LaRose has never observed her in the classroom. She only became aware of this negative evaluation in June 2010. Since 2007, she has not received any further evaluations from LaRose.

Mveng-Whitted believes that LaRose initiated a systematic plan early in his tenure to reduce the number of African-American instructors in the art and design unit. Two other African-American employees were allegedly fired after the spring 2006 semester. Also, during his first month in office, LaRose took office computers away from Mveng-Whitted and an adjunct instructor who is also African-American, Ms. Frances Young. The two faculty members got the computers back only after appealing to LaRose's superiors. In the fall of 2006, LaRose informed Mveng-Whitted that he intended to "get rid of" Young and "had figured out how he

3

was going to do it." He reassigned Young's courses to a Caucasian instructor while having her teach courses outside design, her area of expertise. Young was eventually replaced by another Caucasian instructor after resigning in frustration.

LaRose then removed Mveng-Whitted from all committees without notice. For the 2006-2007 academic year, he replaced her on one committee with an unqualified and inferior Caucasian instructor, even though Mveng-Whitted's contract requires her to serve on departmental committees. When she confronted LaRose about her class assignments, he stated that another instructor was more qualified to teach design courses and that Mveng-Whitted was not qualified to serve on committees or teach African art and illustration. Finally, she says that LaRose cited her failure to serve on a committee as the basis for her negative evaluation in 2007, even though she was removed unwillingly.

Beginning in the fall of 2009,[4] LaRose gave Mveng-Whitted's design courses to Caucasian instructors and assigned Mveng-Whitted courses outside her discipline. Additionally, LaRose reassigned her classroom to a new Caucasian instructor, refused to provide her with current software while providing the same to a new instructor, and gave her courses with low enrollment while giving a new instructor more students. Apparently, only African-American instructors like Young and Mveng-Whitted are subject to such treatment.

Also in the fall of 2009, Mveng-Whitted applied for a promotion to full professor but was notified on November 19 that her promotion was not recommended. She claims LaRose pressured students to submit negative teaching reviews, resulting in the promotion and tenure committee, dean, and university committee opting not to recommend her for promotion to full

---

[4] This is the earliest time at which Mveng-Whitted claims to have been assigned a "foundation course" instead of design courses. She does not actually state in concrete terms when she was first the victim of this allegedly discriminatory conduct.

professor.

Mveng-Whitted has twice complained to VSU about her mistreatment. On February 24, 2009, she asked VSU's human resources department to look into the disparity of treatment between African-Americans and Caucasians under LaRose's leadership. In September 2009, she filed a complaint for workplace harassment and discrimination with VSU's Equal Employment Opportunity Office due to LaRose's verbal abuse and efforts to interfere with her academic performance.

On May 3, 2010, Mveng-Whitted received written notification that she would be laid off and her contract not renewed because the art department was going in a new direction. She learned that the decision was made for budgetary reasons, upon LaRose's recommendation. In June 2011, she was relieved of all teaching assignments in the art and design unit. Mveng-Whitted claims that a Caucasian, non-tenured assistant professor of graphic design who has been employed for three years has not been laid off. According to the defendants, however, Mveng-Whitted remains a tenured faculty member of the university, with no break in employment and no reduction in salary or benefits. (O'Neal Decl. Ex. 1, at 3–4.)[5] Mveng-Whitted does not challenge her employment status, but rather states that this continuity "does not suffice to show that she has not suffered an adverse employment action" (Pls.' Resp. to Defs.' Mot. to Dismiss 4), and that "it is clear that her employment status has been effectively terminated." (*Id.* at 5.)

### B. Lawrence Hawthorne

The following facts are likewise taken from the plaintiffs' complaint and therefore construed in the manner most favorable to Hawthorne's claims. Lawrence Hawthorne began

---

[5] The Court considers this declaration for the limited purpose of deciding the defendant's jurisdictional claim under Fed. R. Civ. P. 12(b)(1). *See Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 782–83 (E.D. Va. 2003). The declaration will not be considered, however, in analyzing the sufficiency of the plaintiff's pleadings under Rule 12(b)(6).

working for VSU in January 1999 as an adjunct faculty member. He became a full-time instructor in 2001 and was promoted to assistant professor of art in 2007. Throughout his employment, Hawthorne had various responsibilities, including curator of the art gallery, faculty senate member, departmental safety coordinator, chairperson of the department's curriculum committee, co-author of a grant for VSU, art camp co-director, and organizer of the visiting artists lecture series.

At some point in 2000 or 2001, VSU announced a new requirement that every faculty member must hold a Ph.D. Hawthorne, whose highest degree at the time was a master's degree in fine arts, claims that no other faculty member in the art department had a Ph.D. in anything other than art history, the only art-based Ph.D. then available. Dr. Eddie Moore, then VSU President, told Hawthorne to "get a Ph.D. in something, [I don't] care what." Shortly afterward, Hawthorne informed his advisees of the change and his anticipated termination, and at least one hundred students participated in a campus demonstration in opposition to the requirement. Since Hawthorne's name appeared on paperwork for equipment signed out by protestors, Dr. Moore apparently suspected him of orchestrating the demonstration. Indeed, Hawthorne claims that Dr. Phillips, then department head, and another administrator informed him of Moore's suspicion directly and discouraged him from applying for tenure that year. Consequently, Hawthorne chose not to apply for tenure in 2006. The following year, he was promoted to assistant professor, though he claims that the provost, Eric Thomas, was responsible for this move.

According to Hawthorne, full-time faculty members are required to submit an annual self-evaluation to their departmental chairperson. Although he does not allege a specific time frame, Hawthorne claims that LaRose asked faculty to give their evaluations directly to LaRose instead of Dr. Phillips. Hawthorne nevertheless decided to gives copies to both Phillips and

6

LaRose. Phillips evaluated Hawthorne as "outstanding" in every area. LaRose, however, told Hawthorne that he "should not want to submit the document at all." Hawthorne claims that LaRose subsequently gave him a poor evaluation as part of LaRose's scheme to eliminate African-American faculty from the art and design unit.

On May 3, 2010, Hawthorne received a letter from defendant Dr. W. Weldon Hill, Interim Vice President for Academic Affairs, informing him that his contract for the 2010-2011 academic year would be a 9-month terminal contract, after which he would no longer be employed due to budgetary restrictions. Hawthorne says that he and Mveng-Whitted were the only ones in the art department who received these letters of termination. He also says that the art department has added new disciplines since the alleged fiscal shortfalls took hold, undercutting the offered justification for their termination.

Dr. Moore announced his retirement sometime in the spring of 2010, but it is unclear whether he was still employed when Hawthorne was informed of his termination. Hawthorne has not been employed by VSU since the spring of 2011. He asserts that two adjunct professors now teach his previous courses in ceramics and sculpture, one of which is a Caucasian female who has been employed with VSU since 2009. He furthermore claims that, among the remaining art instructors, all but three are less than full-time professors, and all but two are Caucasian.

### III.    DISCUSSION

The plaintiffs make a total of eight claims involving racial discrimination. Mveng-Whitted brings claims against VSU (Count One) and LaRose (Count Two) for racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment. Additionally, she claims VSU engaged in race-based discrimination in

7

violation of Title VII of the Civil Rights Act of 1964 (Count Three), retaliation in violation of Title VII (Count Four), and retaliation in violation of §§ 1981 and 1983 (Count Five). Hawthorne also brings claims against VSU (Count Six) and LaRose (Count Seven) for racial discrimination under 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause. He furthermore accuses VSU of race-based retaliation in violation of §§ 1981 and 1983 (Count Eight). The plaintiffs' claims against VSU under §§ 1981 and 1983—Counts One, Five, Six, and Eight—are barred due to Eleventh Amendment sovereign immunity. The remaining claims survive the defendants' motions to dismiss, but, as discussed below, only certain events alleged may serve as the basis for recovery due to applicable statutes of limitation.

### A. Mveng-Whitted

#### 1. Discrimination in Violation of Title VII

Mveng-Whitted claims that VSU discriminated against her due to her race, in violation of Title VII of the Civil Rights Act of 1964 (Count Three). Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Subject to Title VII's statute of limitations, Mveng-Whitted pleads sufficient facts to support her claim of racial discrimination against VSU.

A plaintiff properly pleads a case of unlawful discrimination under Title VII by demonstrating that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) at the time of her termination, she performed at a level which met her employer's legitimate business expectations; and (4) similarly-situated employees outside of the protected class were retained under similar circumstances. *Ze-Ze v. Kaiser Permanente Mid-Atl.*

8

*States Regions, Inc.*, 833 F. Supp. 2d 543, 548 (E.D. Va. 2011). Mveng-Whitted is African-American and states that she performed her job satisfactorily, that VSU relieved her of all teaching assignments with the art and design department, and that VSU retained a Caucasian employee to assume some of her responsibilities. She is not required to establish that she was actually terminated or lost benefits in order to allege an adverse employment action. An action that is "essentially a career-ending action or a harbinger of dismissal" is sufficient to constitute an adverse employment action. *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994); *see also Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) (citing a "reassignment with significantly different responsibilities" as a tangible employment action).

Although Mveng-Whitted's claim survives the motion to dismiss, her theories of liability are nonetheless limited by Title VII's statute of limitations. To bring an action under Title VII, plaintiffs are first required to exhaust administrative remedies by filing an EEOC claim within 300 days of the alleged violation and within 90 days of receiving notice of their right to sue in court. 42 U.S.C §§ 2000(e)-5(e)(1), (f)(1). Mveng-Whitted initiated EEOC proceedings against VSU on September 24, 2010. Although she alleges that she was passed over for promotion, this allegation cannot give rise to liability, as it occurred on November 19, 2009 and is outside Title VII's statute of limitations.[6]

---

[6] Likewise, Mveng-Whitted cannot recover for discrimination which occurred outside of the statute of limitations under a continuing violations theory, as it was not alleged in her EEOC filing, which defines the scope of a Title VII claim. *Smith v. First Union Nat'l. Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996). Mveng-Whitted's charge states that the earliest date of discrimination was September 1, 2009, but the "continuing action" box is unchecked. *See, e.g., Labady v. Gemini Air Cargo, Inc.*, 350 F. Supp. 2d 1002, 1011 (S.D. Fla. 2004) (denying the plaintiff's claim of a continuing violation when he did not check off the "continuing violation" box on the EEOC form). Moreover, she complained of discriminatory conduct in both February and September 2009, which demonstrates her recognition of the discrimination long before the September 24, 2010 EEOC filing. In short, she slept on her rights and cannot recover for untimely claims based on a

In sum, Mveng-Whitted properly states a claim under Title VII, but her claim is limited to discriminatory acts within the 300-day period prior to her EEOC charge. Though incidents of discrimination outside this time frame may be considered as background evidence supporting her claim, they cannot serve as independent bases of recovery. *Evans*, 80 F.3d at 962. Accordingly, the defendants' motion shall be denied as to Count Three.

### 2. *Retaliation in Violation of Title VII*

Mveng-Whitted next claims that VSU retaliated against her for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964 (Count Four). Under Title VII, an employer may not discriminate against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Subject to the same limitations discussed in the previous section, Mveng-Whitted's claim sufficiently states a cause of action for retaliation under Title VII.

To state a claim for retaliation, a plaintiff must plead: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection exists between the protected activity and the adverse action. *Brockman v. Snow*, 217 Fed. Appx. 201, 206 (4th Cir. 2007). Mveng-Whitted's pleadings satisfy this standard: she complained about the alleged discrimination on several occasions, suffered a subsequent adverse employment action, and now alleges sufficient circumstantial evidence to give rise to an

---

continuing violation theory. *See Choma v. Blue Cross Blue Shield of Del.*, No. 06-486-JJF, 2008 WL 4276546, at *6 (D. Del. Sept. 18, 2008) (refusing to allow the plaintiff to recover for untimely violations when she admitted to appreciating their discriminatory nature at the time, yet failed to file charges).

inference of causation.[7]  Mveng-Whitted's allegation that LaRose, whom she had previously accused of racial discrimination, solicited negative evaluations in an attempt to effectuate her termination is sufficient to state a causal connection between the two events. *See Spain v. Va. Comm. Univ.*, 2009 WL 2461662, at *9 (E.D. Va. Aug. 11, 2009) (citing an accusation against the adverse-act's decision maker as sufficient evidence to establish a causal nexus in a retaliation claim).

Like her racial discrimination claim, however, Mveng-Whitted's retaliation claim is limited to the 300-day period preceding her EEOC filing.  Accordingly, VSU's failure to promote Mveng-Whitted and other untimely acts cannot directly give rise to liability, though they may be offered as evidence to support her timely-filed claims.

### 3.      *Racial Discrimination in Violation of 42 U.S.C. §§ 1981 & 1983*

Mveng-Whitted lastly accuses LaRose of discriminating against her on the basis of race, in violation of 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment (Count Two).  The plaintiff alleges facts sufficient to state a claim for racial discrimination, and the Court will accordingly deny the motion to dismiss as to this count.  The plaintiff does not explain, however, what she sees as the relationship between these two sections of the Civil Rights Act.  It could be that she is attempting to bring two separate claims—a § 1981 claim and a distinct equal protection claim pursuant to § 1983—or it could be that she is using § 1983 solely as a vehicle to vindicate her rights under § 1981, given that she is suing a state actor.

---

[7] Although the courts have held that a significant temporal gap between the protected activity and the adverse action may negate an inference that a causal nexus exists between the two, this is typically the case when the plaintiff relies solely on temporal evidence to establish causation. *See, e.g., Hart v. Hanover Cnty. Sch. Bd.*, No. 3:10–CV–794, 2011 WL 652524, at *3 (E.D. Va. Feb. 11, 2011) ("[A] longer period of time between a protected activity and an alleged retaliatory act is, *without more*, insufficient to prove causation.") (emphasis added).  Moreover, whether the gap was too great is a merit issue, not a pleading issue.

This distinction is significant because the statute of limitations for a § 1983 claim is usually determined by reference to the statute of limitations for the analogous state action, whereas the statute of limitations for a § 1981 claim is, in some cases, determined by 28 U.S.C. § 1658, which prescribes a four-year time limit. As a result, the Court is unable to determine not only which precise claim the plaintiff is making but also which statute of limitation should apply. The Court will accordingly order additional briefing on this narrow issue.

Section 1983 is a federal statute that provides a remedy for violations of civil rights by state actors acting under color of law. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 172 (1961). It does not, by itself, confer any substantive rights. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). In order to state a claim for discrimination in violation of 42 U.S.C. § 1983, a plaintiff must allege the following: "(1) the defendant acted under color of state law, (2) by those actions, the defendant intentionally deprived the plaintiff of a right protected under the Constitution or laws of the United States, and (3) the defendant's actions were the proximate cause of the deprivation." *Currie v. Arthur*, 2012 WL 1715390, at *11 (E.D. Va. May 15, 2012). Mveng-Whitted claims that LaRose acted under color of state law and that his actions proximately caused the discrimination she suffered. Since her complaint states a claim for discrimination under Title VII, it likewise sufficiently states that she was deprived of a constitutional right. *See Guseh v. N.C. Cent. Univ.*, 423 F. Supp. 2d 550, 559 (M.D.N.C. 2005) (holding that claims brought under § 1983 may be analyzed under the same standards as Title VII claims and require only one discussion on the merits) (citing *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir.1998)). Mveng-Whitted thus brings a good claim for racial discrimination in violation of § 1983.[8]

---

[8] Actions under § 1983 do not require exhausting administrative remedies and are thus not defined by Mveng-Whitted's EEOC filing. *See Patsy v. Bd. of Regents*, 457 U.S 496, 502 (1982); *Moore v. City of Asheville, N.C.*, 396 F.3d 385, 395 n.4 (4th Cir. 2005).

12

Section 1983 does not have its own statute of limitations. Consequently, the state statute of limitations for personal injury actions, as the most analogous state cause of action, would typically define the time limit for bringing suit. *Almond v. Kent*, 459 F.2d 200, 203-04 (4th Cir. 1972); *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 605-06 (E.D. Va. 2011); *Amr v. Va. State Univ.*, No. 3:10cv787, 2011 WL 4404030 at *14 (E.D. Va. Aug. 11, 2011). Virginia applies a two-year statute of limitations to personal injury claims. Va. Code Ann. § 8.01-243 ("[E]very action for personal injuries, whatever the theory of recovery . . . shall be brought within two years after the cause of action accrues."). As Mveng-Whitted initiated the instant action on December 16, 2011, a § 1983 claim, standing alone, would be limited to events occurring on or after December 16, 2009.

But § 1983 also provides the *exclusive* damages remedy for deprivations of constitutional rights under § 1981 by state actors (as opposed to private actors). *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). 42 U.S.C. § 1981 affords "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property. . . ." § 1981(a). It also separately provides that "[f]or purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). Subsection (b) was adopted in 1991, thus overturning *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989), in which the Supreme Court had held that "racial harassment related to the conditions of employment is *not actionable* under § 1981." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004) (citing *Patterson*, 491 U.S. at 171

13

(emphasis added)).

The 1991 amendment is significant because it appears to provide the basis for the plaintiff's § 1981 claim. And, as a cause of action "arising under an Act of Congress enacted" after December 1, 1990, the statute of limitations would be governed by 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."). *Jones*, 541 U.S. at 382–83.

Courts have previously counseled that § 1983 claims are wholly redundant when they simply replicate the allegations stated pursuant to a § 1981 claim. "Where all named defendants are state actors and the complaint alleges a § 1983 claim covering the same factual matters as the § 1981 claim, courts may dismiss the § 1981 claim or may deem the § 1981 claim merged with the § 1983 claim." *Googerdy v. N.C. Agric. & Tech. State Univ.*, 386 F. Supp. 2d 618, 624 (M.D.N.C. 2005) (internal citations omitted).[9] Here, however, the plaintiff cites § 1981, § 1983 and the Equal Protection Clause of the Fourteenth Amendment under the same count and does not elaborate as to whether she is putting forth multiple theories of liability or just piling on laws in order to be safe. Thus, it would be imprudent to collapse this plaintiff's allegations into a single action under either § 1983 or § 1981, particularly since the correct statute of limitations is contingent on the substantive basis for her claim (or claims).

In light of the foregoing discussion, the Court shall order the plaintiff to elect to proceed with either (A) an equal protection claim pursuant to § 1983 or (B) a § 1981 claim. The plaintiff may not raise multiple theories of liability under this single Count. Both parties shall

---

[9] "The effects of dismissal and merger are the same, because even when a § 1981 claim is merged with a § 1983 claim, the § 1981 claim is in all practicality extinguished." *Googerdy*, 386 F. Supp. 2d at 624, n.2.

subsequently submit briefs on the appropriate statute of limitations. The Court shall specify the relevant requirements and deadlines in the accompanying order.

### B. Hawthorne

Hawthorne claims that LaRose discriminated against him on the basis of race, in violation of 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause of the Fourteenth Amendment (Count Seven). For the reasons discussed in the previous section, Hawthorne shall likewise elect to proceed with a specific claim, and the parties shall address the appropriate statute of limitations through additional briefing. Again, the Court shall specify the relevant requirements and deadlines in the accompanying order.

Hawthorne has properly stated a claim based on the events set forth in the complaint. In reaching this conclusion, the Court gives Hawthorne's claim an admittedly charitable reading. This is appropriate, however, because the plaintiff is proceeding *pro se* and, more importantly, because the defendants are seeking dismissal based only on the initial pleadings. The complaint is not a vehicle for the plaintiff to present the entirety of the evidence.

Hawthorne alleges that LaRose used negative evaluations as part of a plan to bring about Hawthorne's termination and that a Caucasian employee was not subject to the same adverse treatment. This is enough to survive a motion to dismiss. Granted, Hawthorne neither alleges a specific time frame for LaRose's conduct, nor does he explicitly connect LaRose's scheme to others' discriminatory conduct leading up to that point, even though he devotes the great majority of the allegations to the latter. While his claim may go forward, this ruling in no way suggests that he will prevail on the merits.

## C. Sovereign Immunity

All § 1981 and § 1983 claims brought directly against VSU are barred by the Eleventh Amendment, which renders a state immune from suit "unless the state has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Neither of these conditions holds, and VSU is therefore not a "person" subject to suit under § 1983. *See id.* at 64–67. As a result, Counts One, Five, Six, and Eight shall be dismissed.[10]

As for the remaining counts under §§ 1981 and 1983 (Counts Two and Seven), Eleventh Amendment immunity does not protect Thomas LaRose from being sued both for damages and for injunctive relief against future violations. In their prayer for relief, the plaintiffs seek "appropriate compensatory and punitive damages against the individual Thomas LaRose for violations of the United States Constitution as made actionable by the Civil Rights Act of 1871, 42 U.S.C. §[§] 1981 and 1983." (Compl. 22–23.) They also seek to enjoin future violations of these statutes by seeking "appropriate equitable relief against all Defendants (including the individual Defendant acting in his individual capacities). . . ." (*Id.* 23.) The Supreme Court has explained that "[i]n many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)). Thus, where the complaint fails to specify the capacity in which the official is sued, a court should look to the substance of the pleadings and the course of the proceedings in order to determine whether the

---

[10] To the extent that the Complaint may be understood to assert equal protection claims against VSU pursuant to § 1983, those claims would also be barred by the Eleventh Amendment. Whatever the theory of harm may be, Eleventh Amendment provides immunity for states against suits in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

suit is for individual or official liability. *See Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991); *see also Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990), *cert. denied*, 502 U.S. 967 (1991); *Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988); *Shockley v. Jones*, 823 F.2d 1068, 1071 (7th Cir. 1987).

It is sufficiently clear to the Court that the plaintiffs are suing LaRose in his individual capacity insofar as they seek money damages. And with respect to injunctive relief, LaRose's capacity is irrelevant, for the Eleventh Amendment provides no immunity against equitable suits. *Ex Parte Young*, 209 U.S. 123 (1908). Sovereign immunity would only protect LaRose from damages actions in his official capacity, *Will*, 491 U.S. 58 at 70–71, and that is not the situation here.

### D. Motion to Dismiss under Rule 12(b)(1), (4), and (5)

The defendants also seek to dismiss the plaintiffs' claims due to a lack of standing, insufficient process, and insufficient service of process. All three of these grounds for dismissal lack merit. If a plaintiff lacks standing, the Court is without subject matter jurisdiction and is compelled to dismiss the action. Both plaintiffs have sufficiently alleged injury-in-fact to meet the threshold for standing, as the foregoing discussion makes clear. With respect to process and service of process, Virginia's curing statute removes any alleged deficiencies in the plaintiffs' service upon VSU. Va. Code Ann. § 8.01-288 ("[P]rocess which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter."). Under Federal Rule of Civil Procedure 4(j)(2), service upon states and their agencies is governed by the following provision:

> A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Part (B) thus provides specifically for means of service other than delivery to the relevant CEO, who in this case is the President of VSU.[11]  Under Virginia law, service may be made upon "the director, commissioner, chief administrative officer, attorney, or any member of the governing body" of "any other public governmental entity created by the laws of the Commonwealth," such as VSU.  Va. Code Ann. § 8.01-300.  In this case, the plaintiffs insist that they "caused [Dr. Weldon Hill] to be served on behalf of the University" because they "believ[ed] that Dr. Hill, as Provost for the University, was its executive officer." (Mem. Opp. Mot. to Dismiss 7.)  Indeed, they say that "Dr. Weldon Hill was named as a defendant solely for purposes of service of the complaint after a court clerk informed [Mveng-Whitted] that such was required."[12]  (*Id.*)

The Provost is not a member of the "governing body," which in the case of VSU is the Board of Visitors.  *See* Va. Code Ann. §§ 23-165.1-6, 166.  The Provost is, however, the Vice President for Academic Affairs and in this capacity works closely with the President.[13]  The Court therefore takes judicial notice that service "reached" the President, for even the defendants do not deny this fact.  Consequently, the Virginia curing statute, which provides a fully legitimate means of service under Federal Rule of Civil Procedure 4(j)(2), has been satisfied. The defendants' motions to dismiss under Rules 12(b)(1), (4), and (5) are therefore denied.

---

[11] *See* Bylaws of the Board of Visitors, Virginia State University, art. VI ("The President of the University shall be the chief executive and academic officer of the University.") (rev. April 20, 2012), *available at* http://www.vsu.edu/PDFFiles/Board%20of%20Visitors/VSU%20Bylaws.4.20.2012%20Revisio n%20FINAL.pdf.

[12] As stated at the outset of the opinion, Weldon Hill shall be dismissed from the case.  He is named as a defendant only because the plaintiffs considered it necessary for service.  There are no claims made against him in the complaint.

[13] *See* Office of the Provost and Vice President for Academic Affairs, *available at* http://www.vsu.edu/pages/166.asp (last visited July 26, 2012).

## IV.    CONCLUSION

For the reasons set forth above, the Court shall grant the defendants' motions to dismiss in part and deny the motions in part. The Court shall furthermore (1) order additional briefing on the plaintiffs' claims under 42 U.S.C. §§ 1981 and 1983 and the Equal Protection Clause; (2) sever the plaintiffs' suit into two separate actions due to improper joinder; and (3) dismiss defendant Weldon Hill from the action since no claims have been brought against him.

The Court shall enter an appropriate order.

Date: August 21, 2012
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge