IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAWRENCE HAWTHORNE,

    Plaintiff,

v.                                                                                      Civil Action No. 3:12-cv-00620-JAG

THOMAS LAROSE, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' motion for summary judgment. (Dkt. no. 21.) Dr. Lawrence Hawthorne ("Hawthorne"), a former professor at Virginia State University, alleges that his supervisor, Dr. Thomas Larose ("Larose"), discriminated against him on the basis of race when the University terminated him in 2011. Though the record paints a frustrated faculty often divided along racial lines, Hawthorne's claim suffers from a significant failure in proof. Simply put, there is no evidence demonstrating that Larose ever participated in the decision to terminate Hawthorne's employment at VCU. Accordingly, the Court GRANTS Larose's motion for summary judgment.

    **I.**     **UNDISPUTED MATERIAL FACTS**

In January 1999, Hawthorne, an African-American, began working for VSU as an adjunct faculty member (a sculpture instructor) in the art department. He became a full-time instructor in 2001, and was promoted to Assistant Professor of Art in 2007. Throughout his employment, Hawthorne held various responsibilities including curator of the art gallery, faculty

senate member, and chairperson of the department's curriculum committee. He also worked on and submitted grants for VSU.

Dr. Larose chaired the Music, Art and Design Department from July 1, 2006, to June 30, 2010, when he became coordinator of the Art and Design program. Until the date of his termination, Hawthorne believed he and Larose had a "pretty good working relationship." Hawthorne even supported Larose's application for tenure in 2006, calling Larose an "ideal candidate." (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), Ex. 4 to Hawthorne Dep.)

On May 3, 2010, Dr. Weldon Hill, VSU's interim Vice-President for Academic Affairs, sent Hawthorne a letter explaining that VSU "recently lost significant state funding, and the University has been informed that funding will be substantially reduced again in fiscal year 2011-2012." (Id., Ex. 1.) Due to these budget constraints, Hill, who is also African-American, informed Hawthorne that he would receive a "nine-month terminal contract [for the 2010-2011 academic year] at the end of which [he would] no longer be employed at VSU." (Id.) As foretold, Hawthorne's employment with VSU ended in the spring of 2011.

No one has been hired into the position previously held by Hawthorne, (Id., Ex. 2; Pl.'s Statement of Material Disputed Facts ¶ 15), and plaintiff does not question the validity of the financial prognosis in Hill's letter. (See Hawthorne Dep. 31:20-32:11.) Hawthorne also concedes that Hill made the employment decision, and that he does not know whether Larose played any role in that decision. (Id. 61:19-62:4.) In fact, Larose did not participate in the decision to terminate Hawthorne's employment at VSU. (Defs.' Mem., Ex. 2.)

Despite Hawthorne and Larose's "pretty good working relationship," Hawthorne alleges that his termination resulted from Larose's "scheme . . . to eliminate African-Americans from the Art Department." (Compl. ¶ 84.) Indeed, when Larose became chair of the art department, there

were three full-time African-American instructors, and five African-American adjuncts. (Pl.'s Opp'n 7.) Currently, there are no African-Americans full-time professors in the department, and there are four African-American adjunct professors. (*Id.*) Some of the African-American professors who have departed have been replaced with Caucasian instructors. (Pl.'s Opp'n, Ex. C at ¶ 9; Ex. G at ¶ 10.)

Some current professors and former students believe that Larose harbors racial animosity towards African-Americans. One former student declares that "Dr. LaRose cleared the art and design department of anyone with dark skin." (*Id.*, Ex. D at ¶ 8.) This former student also noted that, during class, Larose read from a text where "the 'n' word was used and [Larose] spoke the word out." (*Id.* ¶ 12.) A former African-American adjunct professor claims that Larose and another professor "often spoke disparagingly about the caliber of Black students enrolled in the VSU art program." (*Id.*, Ex. G at ¶ 13.) A friend of another faculty member alleges overhearing Dr. Hill once say, "We all know he's [Dr. Larose] a racist." (*Id.*, Ex. F at ¶ 5.)

Hawthorne also contends that Larose's "scheme" involved the use of "poor evaluation[s] of Hawthorne." (Compl. ¶ 85.) In an affidavit, the former chair of the VSU faculty senate claims that LaRose has "autonomously established himself as the Chair of Art and Design, even including [] on official University documents." (Pl.'s Opp'n, Ex. J at ¶ 9.) LaRose is not, in fact, chair of the art department. (*Id.* ¶¶ 8-9.) Acting as chair "had the very practical effect of affording Dr. LaRose the ability to evaluate, hire, and fire within the Art & Design side of the Department without the authorization or input from" the true chair. (*Id.* ¶ 10.)[1] Hawthorne

---

[1] If Larose is not, in fact, the chair of VSU's Art and Design department, the University's website certainly reflects otherwise. The website clearly identifies Larose as the chair of the Art and Design department, and Mark Phillips as the chair of the "Music Unit." The Court need not resolve this issue, however, because the fact is immaterial to the Court's Section 1981 analysis.

3

believes Larose's actions were part of "a small cadre of Caucasian faculty . . . who were dominating the campus . . . [and] exclu[ding] [] blacks from positions." (Pl.'s Opp'n 12.)

## II. PROCEDURAL HISTORY

Hawthorne and Brenda Mveng-Whitted, a current, tenured African-American professor at VSU, initially brought an eight-count complaint as joint plaintiffs against VSU and Larose. The complaint alleged assorted claims under 42 U.S.C. §§1981 and 1983, and Title VII of the Civil Rights Act. On August 24, 2012, the Court dismissed four claims against VSU on the basis of sovereign immunity (Counts 1, 5, 6 and 8). The Court denied the defendants' motion to dismiss the lone Title VII claims against VSU (Counts 3 and 4, which pertain only to Mveng-Whitted's factual allegations). The Court also concluded that the plaintiffs' discrimination claims against Larose (Counts 2 and 7) stated plausible claims for relief and, therefore, survived dismissal. Finally, because the plaintiffs' factual allegations were sufficiently distinct to constitute two separate civil actions, the action was severed into two separate actions. Hawthorne's only pending claim is against Larose pursuant to 42 U.S.C. § 1981 (Count 7).[2] VSU is no longer a party to this lawsuit.

Larose now seeks summary judgment on the § 1981 claim.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Importantly, to defeat summary judgment, Hawthorne (as the non-moving party) may not rest upon conclusory allegations, the "mere existence of a scintilla of evidence," or the appearance of some "metaphysical doubt" concerning a material fact but, instead, must set forth

---

[2] Hawthorne originally alleged racial discrimination under 42 U.S.C. §§ 1981 and 1983, but has elected to proceed only under Section 1981. (Dkt. no. 12.)

4

specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, Hawthorne, as the party with the burden of proof on the issues before the Court, cannot prevail at summary judgment on those issues unless he adduces evidence that would be sufficient, if believed, to carry the burden of proof on those issues at trial. *See Celotex*, 477 U.S. at 322

At the time VSU filed its summary judgment motion, Hawthorne was proceeding *pro se*.[3] While the Court will liberally construe Hawthorne's *pro se* pleadings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "the 'special judicial solicitude' with which a district court should view . . . *pro se* [filings] does not transform the court into an advocate." *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## IV. DISCUSSION

Hawthorne claims that LaRose discriminated against him on the basis of race, in violation of 42 U.S.C. § 1981. (Dkt. no. 12.) More specifically, Hawthorne's complaint against Larose "has to do with discriminatory actions taken by Mr. Larose after the formation in plaintiff's employment contracts which interfered with the contractual rights and enjoyments and benefits thereof." (Dkt. no. 13 at 2.) Hawthorne's discrimination claim against Larose never leaves the starting gate because he presents no evidence that Larose participated in VSU's decision to terminate Hawthorne's employment.

"Section 1981 outlaws race discrimination in the making and enforcement of private contracts." *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 256 (4th Cir. 2001). The statute provides, in pertinent part, that, "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as enjoyed by white citizens," including "the making, performance,

---

[3] Hawthorne retained counsel after completion of the summary judgment briefing.

modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

Hawthorne's case against Larose fails as a matter of law because he offers no admissible evidence from which a reasonable juror could conclude that Larose played any role in the decision to terminate the plaintiff from his employment. "A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement." *Allen v. Denver Public School Bd.*, 928 F.2d 978, 981, 983 (10th Cir. 1991) (affirming summary judgment for defendant on § 1981 claim for wrongful termination from employment because there was no evidence that the principal of defendant school had any personal involvement in "the termination proceedings. . . ."), *overruled on other grounds*, *Kendrick v. Penske Transp. Services Inc.*, 220 F.3d 1220 (10th Cir. 2000); *see also Shazier v. Southwest Va. Reg'l Jail Auth.*, 2009 U.S. Dist. LEXIS 12052, at *17-20 (W.D. Va. Feb. 17, 2009) ("The relevant case law, as outlined above, requires that a defendant must have intentionally caused an infringement of rights protected by 42 U.S.C. § 1981.").

VSU's interim Vice-President for Academic Affairs (and no one else) authored and tendered the termination letter to Hawthorne. Hawthorne admits that Hill made the employment decision, a decision in which Larose never participated. (Defs.' Mem., Ex. 2; Hawthorne Dep. 61:19-62:4.) Hawthorne attempts to overcome this hurdle with speculation. He contends that because Larose recommended a different African-American faculty member for termination (Ms. Mveng-Whitted), he must have also recommended a similar fate for Hawthorne. (*See* Pl.'s Opp'n 10-11.) But Hawthorne has not submitted any deposition testimony, interrogatory responses, documents or affidavits supporting this bald assertion. At most, Hawthorne's argument amounts to "mere speculation or the building of one inference upon another" – all of

which is insufficient to withstand summary judgment. *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation marks and citation omitted). Thus, even assuming Hawthorne's termination resulted from discriminatory activity, his Section 1981 claim fails as a matter of law because Larose did not personally participate in the employment decision. Accordingly, Larose is entitled to summary judgment and Count 7 must be dismissed as a matter of law.

## V. CONCLUSION

For the reasons set forth above, the Court shall grant the defendants' motion for summary judgment.

The Court shall enter an appropriate order.

Date: August 9, 2013
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge